# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

## 22-3404

---

### UNITED STATES OF AMERICA,

Appellee,

v.

### STEPHEN ALBERT,

Appellant.

---

*APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
HONORABLE C.J. WILLIAMS, U.S. DISTRICT COURT JUDGE*

---

### APPELLANT'S BRIEF

---

**Brad Hansen**
*FEDERAL DEFENDER'S OFFICE*
400 Locust Street, Suite 340
Des Moines, Iowa 50309
EMAIL: brad_hansen@fd.org
PHONE: (515) 309-9610
FAX: (515) 309-9625

ATTORNEY FOR APPELLANT

## SUMMARY OF THE CASE AND
## REQUEST FOR ORAL ARGUMENT

A jury convicted Appellant Stephen Albert of sexual abuse by threat and force, 18 U.S.C. § 2242(1) (Count 1), and sexual abuse of a minor, 18 U.S.C. § 2243(a) (Count 2), both occurring in Indian country, 18 U.S.C. § 1153.

In this appeal, Mr. Albert argues that the district court erred at trial by failing to instruct the jury regarding the correct *mens rea* requirement for § 2242(1), declining to instruct the jury regarding lesser-included offenses for both charged offenses, and admitting highly prejudicial and irrelevant or minimally relevant evidence. Consequently, Mr. Albert asks for a new trial.

The jury instruction error for Count 1 likely impacted the verdict and precipitated essentially a life sentence for Mr. Albert. For that and other reasons, this is an important case for which the Court should allow 15 minutes of oral argument per side.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR
ORAL ARGUMENT ...............................................................i

TABLE OF AUTHORITIES.................................................iv

JURISDICTIONAL STATEMENT ........................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW AND
MOST APPOSITE AUTHORITIES..................................2

STATEMENT OF THE CASE ...............................................3

SUMMARY OF ARGUMENT ...............................................16

ARGUMENT ......................................................................17

    I.    THE DISTRICT COURT INCORRECTLY
INSTRUCTED THE JURY REGARDING THE
MENTAL STATE REQUIRED FOR CONVICTION
FOR SEXUAL ABUSE UNDER 18 U.S.C. § 2242(1)...........17

        A.    The Instructions Omitted "Knowingly" from the
Element of "Knowingly Causes." .................................17

        B.    Mr. Albert is Entitled to Relief for this Plain
Error ........................................................................20

    II.    THE DISTRICT COURT ABUSED ITS DISCRETION
BY REFUSING TO INSTRUCT THE JURY ON THE
LESSER-INCLUDED OFFENSE OF ABUSIVE
SEXUAL CONTACT UNDER 18 U.S.C. § 2244 .................26

Appellate Case: 22-3404    Page: 3    Date Filed: 02/23/2023 Entry ID: 5248571

III. THE DISTRICT COURT ABUSED ITS DISCRETION BY ADMITTING UNFAIRLY PREJUDICIAL EVIDENCE ........................................................................... 28

    A. The District Court Abused Its Discretion by Admitting Evidence that Mr. Albert had Physically Abused Other Family Members ................. 29

    B. The District Court Abused Its Discretion by Admitting Irrelevant and Unfairly Prejudicial School Photographs of L.R. .......................................... 31

CONCLUSION .................................................................... 33

CERTIFICATE OF FILING AND SERVICE ......................................... 34

FED. R. APP. P. 32(a)(7) AND 8TH CIR. RULE 28A(c) CERTIFICATION ................................................................. 36

iii

# TABLE OF AUTHORITIES

**Statutes**

18 U.S.C. § 1152 ................................................................ 1

18 U.S.C. § 1153 ................................................................ 3

18 U.S.C. § 2242 ..................................................... *passim*

18 U.S.C. § 2243 ................................................................ 3

18 U.S.C. § 2244 ..................................................... *passim*

18 U.S.C. § 3231 ................................................................ 1

28 U.S.C. § 1291 ................................................................ 1

**Rules**

Fed. R. App. 4 ................................................................ 15

Fed. R. Evid. 401 ........................................................ 2, 31

Fed. R. Evid. 402 ........................................................ 2, 31

Fed. R. Evid. 403 ............................................... 2, 8, 9, 31, 32

**Cases**

**Supreme Court**

*Borden v. United States*, 141 S. Ct. 1817 (2021) ..................... 18

**Courts of Appeals**

*United States v. Betone*, 636 F.3d 384 (8th Cir. 2011) ............... 18

*United States v. Bruguier*, 735 F.3d 754 (8th Cir. 2013)
    (*en banc*). ............................................... 2, 19, 20

iv

*United States v. Cherry*, 938 F.2d 748 (7th Cir. 1991) ........................... 18

*United States v. Demarrias*, 876 F.2d 674 (8th Cir. 1989) ........... 2, 26, 27

*United States v. Fast Horse*, 747 F.3d 1040 (8th Cir. 2014) ........... *passim*

*United States v. Gentry*, 555 F.3d 659 (8th Cir. 2009) ........................... 26

*United States v. Iu*, 917 F.3d 1026 (8th Cir. 2019) ................................. 18

*United States v. Jackson*, 913 F.3d 789 (8th Cir. 2019) ......................... 20

*United States v. Johns*, 15 F.3d 740 (8th Cir. 1994) ............................... 18

*United States v. Mariano*, 729 F.3d 874 (8th Cir. 2013) ........................ 20

*United States v. Oliver*, 987 F.3d 794 (8th Cir. 2021) ........................... 28

*United States v. Tyerman*, 701 F.3d 552 (8th Cir. 2012) ........................ 26

Appellate Case: 22-3404    Page: 6    Date Filed: 02/23/2023 Entry ID: 5248571

# JURISDICTIONAL STATEMENT

<u>The decision appealed:</u>  Mr. Albert appeals from the judgment entered against him in the U.S. District Court for the Northern District of Iowa.

<u>Jurisdiction of the court below:</u>  The district court had jurisdiction over all aspects of Mr. Albert's prosecution under 18 U.S.C. §§ 1152 and 3231, because he was charged with offenses against the laws of the United States occurring in Indian country.

<u>Jurisdiction of this Court:</u>  This Court has jurisdiction over Mr. Albert's appeal under 28 U.S.C. § 1291, which provides for jurisdiction over a final decision from a U.S. District Court.

The district court entered the judgment on November 4, 2022.  (R. Doc. 86; Add., pp. 22-29.)  Mr. Albert's timely notice of appeal was filed on November 16, 2022.  (R. Doc. 89.)

1

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW AND MOST APPOSITE AUTHORITIES

(1)     Whether the district court erred by failing to instruct the jury that a conviction for sexual abuse by threat or force under 18 U.S.C. § 2242(1) requires proof that the defendant knowingly employed threats or fear to cause the sex acts at issue;

Most Apposite Authorities:  *United States v. Fast Horse*, 747 F.3d 1040 (8th Cir. 2014); *United States v. Bruguier*, 735 F.3d 754 (8th Cir. 2013) (*en banc*).

(2)     Whether the district court erred by declining to instruct the jury regarding lesser-included offenses; and

Most Apposite Authorities:    18 U.S.C. § 2244; *United States v. Demarrias*, 876 F.2d 674 (8th Cir. 1989).

(3)     Whether the district court erred by admitting unfairly prejudicial evidence that was minimally or not at all relevant to the charged offenses.

Most Apposite Authorities:  Fed. R. Evid. 401, 402, and 403.

2

## STATEMENT OF THE CASE

An indictment filed in the United States District Court for the Northern District of Iowa charged Stephen Albert with sexual abuse by threat and force, 18 U.S.C. § 2242(1) (Count 1), and sexual abuse of a minor, 18 U.S.C. § 2243(a) (Count 2), with both offenses occurring in Indian country, 18 U.S.C. § 1153. (R. Doc. 2.) The charges stemmed from Mr. Albert's alleged sexual relationship with L.R. (a female relative), which began when she was a minor and culminated with the birth of a child. Mr. Albert pled not guilty and proceeded to a jury trial.

### Jury Instructions

At the outset of Mr. Albert's case, the district court filed a Criminal Trial Management Order. (R. Doc. 15.) The order required the parties' participation in the preparation of jury instructions. Pursuant to the order, the government was obligated to "serve . . . on defense counsel its proposed instructions," including instructions regarding the elements of the charged offenses. (*Id.*, p. 10.) The order required defense counsel to serve to the government any "alternative proposals," and then to participate in an "instructions conference" with

3

the government. (*Id.*, p. 11.) After that conference, the parties were required to file "jointly" proposed instructions. (*Id.*)

Pursuant to that order, the government filed (on behalf of both parties) Joint Proposed Jury Instructions. (R. Doc. 39.) Within the "joint" proposal, the parties filed different versions of the proposed marshalling instruction for Count 1 (sexual abuse by threat and force). The government's proposal (under the heading "Government's Proposed Instruction No. 12") listed four elements of the offense as follows:

> *One*, by at least Summer 2012 and continuing through about October 2016, the defendant knowingly engaged in a sex act with L.R.
>
> *Two*, the defendant caused L.R. to engage in a sexual act by threatening or placing L.R. in fear that defendant would assault L.R.;
>
> *Three*, the defendant is an Indian; and
>
> *Four*, the offense took place on Indian Country, namely on the Sac and Fox Tribe of the Mississippi in Iowa Meskwaki Settlement.

(*Id.*, p. 18.) The government's proposed instruction also contained a definition for the term "fear." (*Id.*)

The "Defendant's Proposed Instruction No. 12" listed the same elements for Count 1, but omitted a definition of fear. (*Id.*, p. 19.) As

4

an alternative for Count 1, Mr. Albert also proposed an instruction regarding the lesser-included offense of abusive sexual contact, 18 U.S.C. § 2244(a)(2). (Add., pp. 2-3; R. Doc. 39, pp. 20-21.) Mr. Albert also proposed an instruction for abusive sexual contact, 18 U.S.C. § 2244(a)(3), as a lesser-included offense for Count 2. (Add., pp. 4-5; R. Doc. 39, pp. 23-24.)

After considering the Joint Proposed Jury Instructions, the district court filed an order attaching its proposed instructions. (R. Docs. 55, 55-1.) The court stated that it "adopted Government's Proposed Instruction No. 12," including the definition of fear. (R. Doc. 55, pp. 1-2; *see* R. Doc. 55-1, p. 13.) The court's proposal did not include the defendant's proposed instructions on lesser-included offenses, but stated that it "may provide lesser-included offense instructions" if it found that the evidence supported them. (R. Doc. 55, p. 3.) The district court ordered the parties to file any objections to the proposed instructions. (*Id.*)

Mr. Albert filed objections to the district court's proposal. (R. Doc. 58.) Among them, Mr. Albert objected to the district court's inclusion of a definition of fear in Instruction No. 12. (*Id.*, p. 1.) He did not lodge a

5

specific objection to the elements listed in the court's proposed instruction for Count 1. The government did not object to the court's proposal. (R. Doc. 57.)

The district court then filed an order addressing Mr. Albert's objections. (R. Doc. 59.) As relevant here, the court sustained the objection to the definition of fear in Instruction No. 12. (*Id.*, p. 1.)[1]

The district court read Instruction No. 12, along with other instructions, to the jury at the outset of trial. (*Id.*, pp. 160-61.) As initially proposed by the government, the court instructed the jury that a conviction for Count 1 required proof that Mr. Albert "knowingly engaged in a sex act with L.R." (Element 1) and, as a separate element, "caused L.R. to engage in a sexual act by threatening or placing L.R. in fear that defendant would assault L.R." (Element 2). (Add., p. 1; R. Doc. 64, p. 13.)

At the close of evidence, the district court renewed its consideration of Mr. Albert's request for instructions regarding lesser-

---

[1] The court and parties also discussed the jury instructions briefly at the final pretrial conference, which was held approximately one week before trial (*see* R. Docs. 53, 105), and after jury selection (Trial Tr. II, pp. 154-55).

included offenses for both counts.   The court denied Mr. Albert's request, reasoning that "[t]here was no evidence" of sexual contact (rather than sex acts) such that "a jury verdict finding a lesser included here would be completely inconsistent with any evidence presented during the trial."  (Trial Tr. III, p. 350.)

## Motions in Limine

Both parties filed motions in limine before trial.  (R. Docs. 33, 34, 41.)   As relevant here, Mr. Albert asked the court to exclude evidence that he was "verbally or physically abusive" to his wife or any children in the household other than L.R.  (R. Doc. 34, p. 1.)  The government resisted Mr. Albert's motion in limine on this topic.  (R. Doc. 38, pp. 3-4.)

Before trial, the district court entered an order denying this aspect of Mr. Albert's motion in limine, but placing modest limits on the scope of such evidence.  (Add., pp. 6-21; R. Doc. 52.)  The court held that such evidence was relevant to establish that L.R. felt fear or was threatened by Mr. Albert, so long as L.R. was aware of the abusive behavior toward other family members.  (Add., pp. 15-16; R. Doc. 52, pp. 10-11.)  The court also suggested that the evidence may be admissible under Federal

7

Rule of Evidence 404(b) to show Mr. Albert's knowledge, intent, and absence of mistake regarding threats to L.R. (Add., pp. 16-17; *Id.*, pp. 11-12.) Citing Rule 403, the district court ruled that the government could elicit general testimony about the abuse of other family members, but could not solicit details regarding the assaults. (Add., p. 16; *Id.*, p. 11.)[2]

## Trial and Evidentiary Issues

L.R. testified at trial about the crimes that Mr. Albert allegedly committed against her. She was born in 1999. (Trial Tr. III, p. 184.) She is Native American and spent part of her childhood living on the Meskwaki Settlement in Iowa. (*Id.*, pp. 184-85, 187.) Her mother (J.R.)[3] was married to Mr. Albert. Mr. Albert is not L.R.'s biological father. L.R. has several half-siblings, including A.A., who is a biological child of J.R. and Mr. Albert. (*Id.*, p. 188; *see also id.*, pp. 304-05.)

---

[2]  The district court answered clarifying questions regarding the order at the final pretrial conference. (R. Doc. 105, pp. 20-27.)

[3]  Various court documents refer to J.R. by her former last name, Albert. She testified that she no longer uses that last name, and thus this brief refers to her as J.R. (Trial Tr. III, pp. 266-67.)

At the outset of L.R.'s testimony, the government offered into evidence a series of her school photographs as Exhibit 9. (*Id.*, p. 186.) The photographs were taken when she was in the seventh, eighth, and ninth grades.[4] (*Id.*, pp. 187, 201.) Mr. Albert objected to admission of the photographs based on irrelevancy and Federal Rule of Evidence 403. Without soliciting argument or an explanation for the photographs from the government, the district court overruled the objection. (*See id.*, p. 186.)

L.R. testified that when she was 12 years old, her mother J.R. went to prison. When J.R. went to prison, Mr. Albert became L.R.'s primary guardian. (*Id.*, pp. 189-90.) According to L.R., her relationship with Mr. Albert began to "change" for the worse at that point. (*Id.*, p. 190.) She testified that the turning point was an incident in which he touched her vagina over her clothes. (*Id.*, pp. 190-91.) She also testified about an incident that occurred when she was 13 years old in which Mr. Albert had her lift her skirt and pull down her underwear so that he could check whether she had been raped or assaulted. (*Id.*, pp. 191-92.)

---

[4]    As noted, there are four photographs, and it is unclear what grade L.R. was in when the fourth was taken. (*See* R. Doc. 66-12.)

Appellate Case: 22-3404    Page: 15    Date Filed: 02/23/2023 Entry ID: 5248571

L.R. also testified about a subsequent incident in which Mr. Albert had vaginal intercourse with her. (*Id.*, pp. 192-94.) According to L.R., they were not living on the Settlement when these incidents occurred. (*See id.*, pp. 190, 222.)

When L.R. was in eighth grade, she and Mr. Albert moved to a home on the Settlement, where they lived with several family members. (*Id.*, pp. 194-95; Ex. 15.) L.R. testified that after the move, Mr. Albert sexually assaulted her "every other day." (Trial Tr. III, p. 195.) She testified that he would "usually" assault her at night, while others were sleeping. (*Id.*, p. 196.) She claimed that he would put his hand over her mouth and hold her down if she resisted. (*Id.*) According to L.R., the sexual assaults remained a secret because Mr. Albert "would just keep quiet about it, [and] make sure [she] didn't say anything to anyone." (*Id.*)

Thereafter, L.R. and Mr. Albert moved to another house on the Settlement, where they again lived with numerous family members. (*Id.*, pp. 196-97; Ex. 16.) While they lived in this home, L.R.'s mother

10

was released from prison, and her grandmother died.[5]  L.R. testified that Mr. Albert regularly had vaginal and oral sex with her in this home.  She also testified about an incident in which A.A. observed L.R. naked in a bed with Mr. Albert on top of her.  (Trial Tr. III, pp. 197-99.)

In March 2014 (when L.R. was 15 years old), Mr. Albert won the lottery and used the proceeds to purchase a house outside the Settlement.[6]  (*Id.*, pp. 199-201; Ex. 14.)  According to L.R., Mr. Albert continued to assault her in that home.  (Trial Tr. III, p. 201.)

From October 2012 through October 2016, Mr. Albert worked in maintenance at a health clinic on the Settlement.  (*Id.*, pp. 201-02, 293; Exs. 8, 17.)  L.R. testified that while he worked there, Mr. Albert had vaginal sex with her at the clinic on multiple occasions.  (Trial Tr. III, pp. 202-06.)

---

[5]  The government established that J.R. (L.R.'s mother) was in custody from October 2011 to March 2013, when L.R. was 12 to 14 years old.  (Trial Tr. III, pp. 324-28; Ex. 12.)  L.R.'s grandmother died on May 12, 2013.  (Trial Tr. III, pp. 322-23; Ex. 3.)

[6]  Mr. Albert won the lottery on March 4, 2014.  He purchased the house on March 30, 2014.  (*See* Trial Tr. III, pp. 250-51; Exs. 4, 18.)

11

During the fall of L.R.'s senior year in high school, she became pregnant. Mr. Albert initially denied that he was the father. As a result, L.R. took a paternity test. (*Id.*, pp. 207-08.) L.R. finally disclosed Mr. Albert's behavior to her mother, who initially did not believe her. (*Id.*, pp. 212-13.) When asked why she did not disclose it sooner, L.R. explained that she was scared of "getting in trouble, and having [Mr. Albert] get in trouble" and taken away from his family. (*Id.*, p. 214.)

L.R. testified about physical and verbal abuse inflicted upon her by Mr. Albert. She testified that "whenever [she] wouldn't do as he wanted or if [she] did something bad, he would hit [her]." (*Id.*, p. 208.) When asked by the prosecutor what would "trigger" the physical abuse, L.R. explained that "[i]t could be over something small or big, like . . . not doing [her] chores or cleaning or getting bad grades." (*Id.*, p. 209.) She said that Mr. Albert would also call her "a bitch, a slut, and other names." (*Id.*, p. 228.)

L.R. also testified about observing Mr. Albert physically and verbally abusing other members of the household. L.R. testified that she saw Mr. Albert "yell at and hit" her mother, and "grab a shoe or a

12

belt and hit" her siblings.  (*Id.*, p. 209.)  She also claimed that such abuse occurred "pretty close" to every day.  (*Id.*, pp. 209-10.)

After the discussion of physical abuse, the prosecutor asked L.R. how she thought Mr. Albert would have reacted if she told him that she did not want to have sex with him.  (*Id.*, p. 210.)  L.R. responded that she thought he "would have yelled at me, and hit me, and possibly raped me."  (*Id.*, p. 211.)  She then testified about a conversation that occurred when she was in seventh or eighth grade in which Mr. Albert asked her if she wanted to continue the sexual relationship.  (*Id.*, p. 212.)  L.R. did not testify exactly how she responded to Mr. Albert's question; rather, she implied that she did not tell him that she wanted to end the sexual relationship because she was afraid that he would "yell at me and accuse me of whatever."  (*Id.*)

J.R. (L.R.'s mother) also testified for the government.  J.R. testified that Mr. Albert was physically abusive to her in L.R.'s presence.  According to J.R., he was also physically and verbally abusive to L.R.  (*Id.*, pp. 272-74.)  After her release from prison, J.R. came to suspect that Mr. Albert was having an inappropriate relationship with

13

L.R., but she never observed any sexual contact between the two. (*See id.*, pp. 275-80.)

A.A. (L.R.'s younger half-sister) also testified. She claimed that when she was in first grade, she walked into a bedroom and observed Mr. Albert on top of L.R., who was naked and crying. A.A. left the room. (*Id.*, pp. 309-10.) A.A. also testified that she saw Mr. Albert verbally and physically abuse L.R. (*Id.*, p. 311.) Additionally, she testified that Mr. Albert physically assaulted her, J.R., and L.R.'s other siblings in L.R.'s presence. She said that Mr. Albert "threw us down and beat the crap out of us" "a bunch of times." (*Id.*, pp. 311-12.)

The government offered evidence that Mr. Albert made incriminating statements to law enforcement regarding his relationship with L.R. He acknowledged that the relationship turned sexual, though he offered varying information about when that occurred. (*See id.*, pp. 231-37, 244-49; Exs. 5, 6.) DNA testing confirmed that he was the father of L.R.'s child. (Trial Tr. III, pp. 331-32; Exs. 2, 21.)

Over Mr. Albert's objection, the district court admitted evidence that he pled guilty in Iowa state court to two counts of incest for his relationship with L.R. (Trial Tr. III, pp. 251-55; Exs. 11, 20.) The

14

parties stipulated that a conviction for incest does not require proof of nonconsensual sex, or threats, force, or fear. (Ex. A.)

After deliberation, the jury found Mr. Albert guilty of both counts. (R. Doc. 68.)

## Sentencing and Notice of Appeal

The district court sentenced Mr. Albert to concurrent sentences of 452 months' imprisonment on Count 1 and 180 months in prison (the statutory maximum) on Count 2. The court entered the judgment on November 4, 2022. (Add., pp. 22-29; R. Doc. 86.)

Mr. Albert's notice of appeal, which was filed on November 16, 2022 (R. Doc. 89), is timely. *See* Fed. R. App. P. 4(b)(1)(A)(i).

15

# SUMMARY OF ARGUMENT

Mr. Albert is entitled to a new trial.

There were prejudicial errors in the jury instructions. Count 1 charged Mr. Albert with sexual abuse pursuant to 18 U.S.C. § 2242(1). That statute requires proof that the defendant knowingly caused a person to engage in a sex act by employing threats or fear. Unfortunately, the district court incorrectly instructed the jury on the *mens rea* requirement for § 2242(1), depriving Mr. Albert of a strong defense to the most serious charge against him.

Additionally, the district court erroneously declined to provide the jury instructions on lesser-included offenses for both Counts 1 and 2. In doing so, the court impermissibly made credibility findings that should have been left to the jury to make.

The district court also made evidentiary errors. It admitted evidence that Mr. Albert physically abused L.R.'s family members, even though that unfairly prejudicial evidence had little relevance to the charged offenses. The court also admitted L.R.'s school photographs without any explanation from the government as to their relevance.

16

# ARGUMENT

## I. THE DISTRICT COURT INCORRECTLY INSTRUCTED THE JURY REGARDING THE MENTAL STATE REQUIRED FOR CONVICTION FOR SEXUAL ABUSE UNDER 18 U.S.C. § 2242(1).

The jury instructions for Count 1—the count that precipitated essentially a life sentence for a man of Mr. Albert's age—were prejudicially incorrect, and should be the basis for a new trial.

### A. The Instructions Omitted "Knowingly" from the Element of "Knowingly Causes."

The district court instructed the jury that a conviction for sexual abuse required proof beyond a reasonable doubt that Mr. Albert "knowingly engaged in a sex act with L.R." (Element 1) and, as a *separate element*, "caused L.R. to engage in a sexual act by threatening or placing L.R. in fear that defendant would assault L.R." (Element 2). This misstated the *mens rea* required for conviction.

The statute of conviction for Count 1 subjects an individual to punishment if he "*knowingly . . . causes* another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping)." 18

17

U.S.C. § 2242(1) (emphasis added). A person acts knowingly when he "makes a deliberate choice with full awareness of consequent harm." *Borden v. United States*, 141 S. Ct. 1817, 1823 (2021). By its terms, § 2242(1) "requires proof that the defendant 'knowingly' induce the prohibited conduct 'by threatening or placing that other person in fear.'" *United States v. Cherry*, 938 F.2d 748, 754 (7th Cir. 1991); *see also generally United States v. Iu*, 917 F.3d 1026, 1031 (8th Cir. 2019) (finding sufficient proof for § 2242(1) conviction where defendant "put [the victim] in fear of further physical abuse [and] . . . knew she was in fear"); *United States v. Betone*, 636 F.3d 384, 388 (8th Cir. 2011) (affirming § 2242(1) conviction where defendant knowingly placed mentally handicapped victim in fear to facilitate sex acts); *United States v. Johns*, 15 F.3d 740, 742 (8th Cir. 1994) (finding sufficient proof for § 2242(1) conviction where defendant "cultivated [the victim's] fear and compliance").

Instead, the district court here incorrectly instructed the jury that the "knowing" *mens rea* applies to the sex act, not to the inducement by threat or fear. This, in essence, negated the *mens rea* requirement of § 2242(1). Based on the instructions given at trial, the jury could have

18

found Mr. Albert guilty of Count 1 if he *unknowingly* used threats or fear to induce L.R. to engage in a sex act. In other words, it was sufficient for conviction if Mr. Albert knowingly engaged in a sex act with L.R. that he caused by making her fearful, regardless whether he knowingly exploited that fear.

The jury instruction is plainly incorrect after *United States v. Bruguier*, 735 F.3d 754 (8th Cir. 2013) (*en banc*). *Bruguier* interpreted § 2242(2), which applies when a person "knowingly . . . engages in a sexual act with another person if that other person is . . . (A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." The issue was whether "knowingly" applies only to "sexual act," or whether it requires proof of knowledge that the victim was incapable of consent. 735 F.3d at 757-58. This Court held that the latter is the correct interpretation. The Court based this conclusion on the presumption that a *mens rea* requirement applies to each element of a crime, the rule of lenity, the significant penalties associated with the offense, and legislative history. *Id.* at 763; *see also id.* at 764 (Riley, C.J., concurring) (writing "separately to emphasize [his] view that the

19

statute is not ambiguous" and clearly requires knowledge of the victim's incapacity).

There is no material difference between § 2242(1) and § 2242(2), and there is no distinguishing *Bruguier*. Subsection (2) requires proof that the defendant knew that the victim was incapacitated. Its neighboring provision, § 2242(1), requires proof that the defendant knew that he induced a sex act by threat or force. Consequently, similar to *Bruguier*, the jury instructions in this case "deprived [Mr. Albert] of his defense" that he did not know that L.R. engaged in sex acts with him due to threats or fear. *See id.* at 763.

## B. Mr. Albert is Entitled to Relief for this Plain Error.

Mr. Albert did not object to the error, but he is entitled to relief. This Court generally reviews an unobjected-to instruction for plain error. *United States v. Jackson*, 913 F.3d 789, 793 (8th Cir. 2019). If a defendant "specifically requests" a particular instruction, however, the issue is waived. *Id.* (quoting *United States v. Mariano*, 729 F.3d 874, 881 (8th Cir. 2013)). Under plain error review, this Court reverses only if the defendant shows (1) an error, that (2) was plain, (3) affected substantial rights, and (4) seriously affected the fairness, integrity, or

20

public reputation of judicial proceedings. *United States v. Fast Horse*, 747 F.3d 1040, 1042 (8th Cir. 2014) (finding plain error based on *Bruguier* for § 2242(2) jury instructions).

The Court should not find that a waiver occurred for at least two reasons. *First*, although the incorrect instruction appeared in the parties' Joint Proposed Jury Instructions (and the defendant proposed an incorrect instruction for Count 1 as well), the Court ultimately declined to instruct the jury on Count 1 in the manner requested by Mr. Albert, because it declined to give the instruction on the lesser-included offense. Thus, Mr. Albert did not "specifically request[]" the instructions for Count 1 that the court actually provided to the jury.

*Second*, pursuant to the trial setting order in the case, the government drafted the Joint Proposed Instructions and served them to Mr. Albert's counsel. Although Mr. Albert's counsel did not identify the error at issue, the failure was essentially a failure to object to the government's proposal, rather than a specific request to give an erroneous instruction. Thus, Mr. Albert did not waive his right to challenge the instruction on appeal.

Appellate Case: 22-3404    Page: 27    Date Filed: 02/23/2023 Entry ID: 5248571

Under plain error review, Mr. Albert is entitled to a new trial on Count 1. As explained, the instruction was erroneous and contrary to this Court's *en banc* decision in *Bruguier*, so Mr. Albert satisfies the first and second requirements of the plain error test. *See Fast Horse*, 747 F.3d at 1043.

The error affected Mr. Albert's substantial rights because it was prejudicial, meaning there is a "reasonable probability" of a different outcome with correct instructions. *See id.* Although the government offered evidence that L.R. was generally fearful of Mr. Albert, there is insufficient evidence in the record from which a jury could conclude beyond a reasonable doubt that he knowingly exploited her fear to induce the sexual relationship. L.R. never testified that she told Mr. Albert that she feared him or considered him threatening. In fact, as recounted previously, L.R. testified about a conversation in which Mr. Albert asked her if she wanted their relationship to remain sexual or not. L.R. did not testify that she told Mr. Albert that she feared him or considered him threatening. The fact that Mr. Albert asked L.R. this question suggests that he did not believe he was using threats or fear to cultivate the relationship.

22

Moreover, L.R. never testified that Mr. Albert physically abused her to foster their sexual relationship. Instead, when asked by the prosecutor what would trigger Mr. Albert to hit her, L.R. responded that it could occur if she did not do her chores or if she got bad grades. L.R. also testified that Mr. Albert physically abused other family members, but said nothing about any connection between that physical abuse and the sexual relationship. Thus, L.R.'s testimony provided no basis to infer a connection *in Mr. Albert's mind* between the sex acts with L.R. and his physically abusive behavior toward her and other family members.

The government elicited testimony from L.R. about what *she thought* Mr. Albert would do if she resisted his advances, and she responded that she thought he would have yelled at her or raped her. This testimony may have established that Mr. Albert caused L.R. to be fearful, but it said nothing about his mental state. Even if Mr. Albert engaged in sex acts with L.R. and was physically abusive, and even if L.R. feared him, that is not enough for a conviction under § 2242(1), which requires proof of the defendant's state of mind. Because that was lacking, the jury instruction error deprived Mr. Albert of his best

23

defense on the most serious count against him. *See Fast Horse*, 747 F.3d at 1044 ("[N]either party presented evidence during the trial on Fast Horse's knowledge of [the victim's] incapacity or argued it in closing. Had the jury instructions required the government to prove this element beyond a reasonable doubt, presumably both parties would have presented additional evidence and argument on that element.").

In fact, the district court made comments at sentencing establishing the very point Mr. Albert raises here:[7]

> [W]hat I find is that the defendant was a physically, mentally, and emotionally abusive individual to his family just generally. And I don't find—and I can't conclude from the facts—that that was part of a design or intent or plan by him in order to act that way to facilitate the commission of the sexual abuse here that the defendant was charged with. It would be different, for example, if there was absolutely no history of any physical abuse or mental abuse at all unless it was somehow related to the sexual assault or only started when the sexual assault began. And I understand the government's theory [that Mr. Albert perpetrated the physical abuse to foster the sexual relationship with L.R.]. I'm completely convinced that that atmosphere certainly allowed the defendant to commit this crime, intimidated the victim in this case, made her susceptible because she was fearful, *but I don't think that was part of a plan. I don't*

---

[7] The district court made these comments in the course of rejecting the government's argument that L.R.'s sister qualified as a victim of Mr. Albert's offense. (Sentencing Tr., pp. 26-29.)

24

*think that was the defendant's intent.* I think he was just an abusive person; and because he was an abusive person, it allowed him to further victimize one of his children in a different way than he victimized the other children.

(Sentencing Tr., pp. 26-27 (emphasis added).) Finally, as in *Fast Horse*, the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. "[W]here a defendant has been denied his Sixth Amendment right to a jury determination of an important element of the crime, the integrity of the judicial proceeding is jeopardized." 747 F.3d at 1044 (quotation marks omitted). The error at issue significantly misstated the government's burden, eliminated Mr. Albert's best defense, and made a conviction far easier to attain.

Accordingly, notwithstanding the lack of an objection below, Mr. Albert is entitled to a new trial on Count 1 for this serious error in the jury instructions.

Appellate Case: 22-3404     Page: 31     Date Filed: 02/23/2023 Entry ID: 5248571

## II. **THE DISTRICT COURT ABUSED ITS DISCRETION BY REFUSING TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF ABUSIVE SEXUAL CONTACT UNDER 18 U.S.C. § 2244.**

The crime of abusive sexual contact under § 2244(a) is a lesser-included of both charged offenses.  *See* 18 U.S.C. §§ 2244(a)(2), (3); *see also United States v. Demarrias*, 876 F.2d 674, 676-77 (8th Cir. 1989).  A defendant is entitled to a lesser-included instruction if:

> (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, *i.e.*, a charge may be demanded by either the prosecution or the defense.

*United States v. Gentry*, 555 F.3d 659, 667 (8th Cir. 2009).  The district court's refusal to instruct the jury on the lesser-included offenses is reviewed for abuse of discretion.  *United States v. Tyerman*, 701 F.3d 552, 561 (8th Cir. 2012).

In this case, the district court's refusal to give the requested instructions hinged on its conclusion that Mr. Albert's request failed the fourth requirement.  Specifically, the court reasoned that "a jury verdict

26

finding a lesser included here would be completely inconsistent with any evidence presented during the trial." (Trial Tr. III, p. 350.)

The district court erred for at least two reasons. *First*, as *Demarrias* noted, no sexual act (as charged in Counts 1 and 2) "can be accomplished without an intentional touching with sexual intent," *i.e.*, abusive sexual contact. 876 F.2d at 676. In other words, abusive sexual contact is inherent in an unlawful sexual act. The district court incorrectly assumed that the jury was obligated to credit all of L.R.'s account or none of it. If, instead, the jury accepted *part* of her account as true, then it could have reasonably found that Mr. Albert committed an abusive sexual contact, rather than sexual abuse by threat or force or sexual abuse of a minor.

*Second*, L.R. *did* allege abusive sexual contact that did not amount to a sex act when she testified that Mr. Albert touched her vagina over her clothes. The government asserted that the incident could not provide the basis for the lesser-included instructions because it allegedly occurred off the settlement, but, again, it was the jury's province to decide whether L.R.'s account was fully, partially, or not at all credible. As part of its credibility finding, the jury was entitled to

27

consider whether L.R. was mistaken about the location and timing of that incident, and whether it potentially occurred on the settlement. And, considering L.R.'s young age at the time of the alleged conduct and the passage of time since it occurred, a jury could reasonably conclude that her testimony was mistaken.

In short, there was evidence from which the jury could coherently decide that Mr. Albert was guilty of abusive sexual contact but not guilty of the charged offenses. Accordingly, he was entitled to the requested lesser-included instructions.

## III.  THE DISTRICT COURT ABUSED ITS DISCRETION BY ADMITTING UNFAIRLY PREJUDICIAL EVIDENCE.

This Court reviews a district court's decision to admit objected-to evidence for abuse of discretion. If the district court erred, reversal is required unless this Court determines that the error was "harmless." *United States v. Oliver*, 987 F.3d 794, 799 (8th Cir. 2021).

Here, the district court committed reversible error by admitting over Mr. Albert's objection evidence that had little or no relevance and had a substantial prejudicial and emotional impact.

28

## A.   The District Court Abused Its Discretion by Admitting Evidence that Mr. Albert had Physically Abused Other Family Members.

With modest limitations, the district court allowed the government to introduce evidence that Mr. Albert was physically abusive to family members other than L.R.  This was erroneous.

Despite the district court's order on the motion in limine, the testimony regarding Mr. Albert's alleged physical abuse of other family members was not, in fact, very limited.  L.R. testified that she saw Mr. Albert yell at and hit her mother and beat her siblings with a shoe or belt.  She testified that this abuse occurred nearly every day.  J.R. (L.R.'s mother) testified that Mr. Albert was physically abusive toward her in L.R.'s presence.  A.A. (L.R.'s half-sister) testified that Mr. Albert threw her down and "beat the crap out of" her and her other siblings a "bunch of times" in L.R.'s presence.

In denying Mr. Albert's motion in limine on this topic, the district court explained that such evidence was relevant because it added credibility to L.R.'s account and helped explain why she did not report the sexual abuse sooner.  This overstates the probative value of such evidence.  L.R. testified that she did not report Mr. Albert's sexual

29

abuse earlier because she wanted to avoid "getting in trouble, and having him get in trouble and taking him away from [her] brothers." (Trial Tr. III, p. 214.)  There was no evidence that L.R.'s delay in reporting the sexual abuse had anything to do with the physical abuse of her family members.

The district court also concluded that such evidence "may be admissible . . . to show defendant knew and intended to threaten L.R. and did not do so by mistake" (Add., p. 16; R. Doc. 52, p. 11), but that is a stretch.  Evidence of physical abuse toward other family members (apparently for reasons unrelated to the sexual relationship with L.R.) does not show that Mr. Albert knowingly threatened L.R. for the purpose of fostering the sexual abuse.  If anything, it suggests that his physical abuse of L.R. (like his physical abuse of the other family members) was unrelated to any sexual abuse, because there was no evidence that he was sexually abusing the other family members.  As noted, the district court essentially made that point at sentencing.  *See supra* Part I.B.

In light of the minimal relevance, the Court should have excluded the evidence under Rule 403 because the unfair prejudice to Mr. Albert

30

substantially outweighed any probative value. Fed. R. Evid. 403. In a brief but emotional trial, three witnesses testified about Mr. Albert's abhorrent—but mostly irrelevant—physically abusive behavior toward his family. The jury heard that Mr. Albert "beat the crap out of" his children and used a shoe or belt to hit them. This evidence unnecessarily distracted from the issues in the case and deprived Mr. Albert of a fair trial.

### B. The District Court Abused Its Discretion by Admitting Irrelevant and Unfairly Prejudicial School Photographs of L.R.

Over Mr. Albert's objection, the district court admitted into evidence four of L.R.'s school photographs as Exhibit 9. This was also an error.

The school photographs had no "tendency to make a fact more or less probable than it would be without" them, Fed. R. Evid. 401, and thus they are inadmissible. Fed. R. Evid. 402. The government offered L.R.'s photographs into evidence during her testimony. The government provided no explanation for the photographs. The fact that L.R. had school photographs taken—like most any school-aged child does—does not make it more or less likely that Mr. Albert committed

31

the charged offenses. The photographs themselves had nothing to do with the sexual abuse. They were irrelevant.

The photographs were unfairly prejudicial and thus also inadmissible under Rule 403. There was no proper reason why the jury needed to see what L.R. looked like at the time of the alleged sexual abuse. The most probable explanation for such evidence is to generate an emotional response from the jury. This evidence, along with the evidence of physical abuse of L.R.'s family members, unnecessarily distracted from the issues at hand.

Accordingly, Mr. Albert is entitled to a new trial for these evidentiary errors.

Appellate Case: 22-3404    Page: 38    Date Filed: 02/23/2023 Entry ID: 5248571

# CONCLUSION

For the foregoing reasons, this Court should reverse Mr. Albert's conviction and remand for a new trial.

Respectfully submitted,

*/s/ Brad Hansen*

BRAD HANSEN
Attorney for Appellant
Federal Defender's Office
400 Locust Street, Suite 340
Des Moines, Iowa 50309
EMAIL: brad_hansen@fd.org
PHONE: (515) 309-9610
FAX: (515) 309-9625

33

## CERTIFICATE OF FILING AND SERVICE

I certify that on February 21, 2023, I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I scanned the brief for viruses using Trend Micro Apex 12.500.1004. Also on February 21, 2023, a motion for permission to file the Addendum under seal and the proposed Addendum was sent via Federal Express to the Clerk of Court.

I further certify that, on February __, 2023, after the Court approved the brief and addendum, I sent via FedEx ten paper copies of the brief and addendum to the Clerk of Court; one paper copy of the brief and addendum via regular U.S. mail to Assistant U.S. Attorneys Emily Nydle and Lisa Williams at 111 Seventh Avenue, S.E., Cedar Rapids, IA 52401 and one copy of the brief via regular U.S. mail to the appellant at IMCC, 2700 Coral Ridge Ave., Coralville, IA 52241.

Appellate Case: 22-3404    Page: 40    Date Filed: 02/23/2023 Entry ID: 5248571

Respectfully submitted,

*/s/ Brad Hansen*
BRAD HANSEN
Attorney for Appellant
Federal Defender's Office
400 Locust Street, Suite 340
Des Moines, Iowa 50309
EMAIL: brad_hansen@fd.org
PHONE: (515) 309-9610
FAX: (515) 309-9625

35

## FED. R. APP. P. 32(a)(7) AND 8TH CIR. RULE 28A(c) CERTIFICATION

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7). The brief uses a proportional-space, 14-point Century Schoolbook font. Based on a word count under Microsoft Word Version 14, the brief contains 605 lines and 6177 words, excluding the items listed in Fed. R. App. P. 32(f).

Respectfully submitted,

*/s/ Brad Hansen*
BRAD HANSEN
Attorney for Appellant
Federal Defender's Office
400 Locust Street, Suite 340
Des Moines, Iowa 50309
EMAIL: brad_hansen@fd.org
PHONE: (515) 309-9610
FAX: (515) 309-9625

36